

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LUCINDA PALOMO, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-21-CV-01145-XR |
| | § | |
| ACTION STAFFING SOLUTIONS, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>ORDER</u>

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 39), Plaintiff's response (ECF No. 41), and Defendant's reply (ECF No. 42). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

Plaintiff Lucinda Palomo brings this employment discrimination and harassment suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. ECF No. 20.

Plaintiff brings claims for discriminatory nepotism, gender discrimination, age discrimination, national origin discrimination, harassment, and hostile work environment.[2] Plaintiff is a Mexican American female over forty years old. ECF No. 20 ¶ 1. Defendant is Action Staffing Solutions, Inc. ("Staffing"), a staffing agency headquartered in Loveland, Colorado and owned by Robin Fisher, that specializes in providing leased or contingent workers to employers

---

[1] These facts are undisputed unless otherwise noted.
[2] The Court granted Defendant's motion to dismiss (ECF No. 23) in part on October 13, 2022, dismissing Plaintiff's claim that Defendant failed to provide her with due process upon her removal. *See* Text Order (October 13, 2022).

on location. ECF No. 39-2, Fischer Decl. at 102. Relevant to this suit, Staffing provides federal, state, and local governments with contingent or leased employees through servicing government contracts. *Id*. at 103.

On October 1, 2019, Staffing entered into a contract to provide employees for the General Clerk II and III positions at Brooke Army Medical Center ("BAMC"). *Id*. at 103. The clerk positions reported to both Robin Fischer and Toyva Homes, the Operation and Recruiting Manager. *Id*. Staffing also appointed an on-site manager to oversee the clerk positions. *Id*. Paul "Tye" Tyquiengco served in this role at all times relevant to this suit. *Id*.

Plaintiff was hired as a General Clerk II on October 1, 2019. ECF No. 39-1, Fischer Decl. at 104. In December 2019, Staffing communicated its desire in hiring a new Assistant Lead and Trainer for BAMC. *Id*. at 104. Plaintiff applied and interviewed for the position and was ultimately selected. *Id*. at 104–05. On September 18, 2020, Plaintiff was terminated from the position. *Id*. at 106.

The parties dispute the timeliness of Plaintiff's filing her charge of discrimination against Staffing with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff contends that she initially filed her charge of discrimination against Staffing with the San Antonio office of the EEOC on June 11, 2021, 266 days after her termination. ECF No. 20 ¶ 44. Defendant contends that Plaintiff failed to timely exhaust her administrative remedies because EEOC records in the Dallas office of the EEOC show that Plaintiff's charge of discrimination was not received until July 20, 2021, 305 days following Plaintiff's termination. ECF No. 39 at 14.

Plaintiff originally filed her complaint on November 18, 2021. ECF No. 1. On February 3, 2022, Defendant filed its first motion to dismiss. ECF No. 5. On July 1, 2022, the Court granted Defendant's motion to dismiss and gave Plaintiff 14 days to file an amended complaint. ECF No.

19. Plaintiff timely filed her first amended complaint on July 15, 2022. ECF No. 20. Defendant filed its second motion to dismiss on July 29, 2022. ECF No. 23. On October 13, 2022, the Court granted in part and denied in part Defendant's motion to dismiss, granting the motion with regard to Plaintiff's claim that Defendant failed to provide her with due process upon her removal, but otherwise denying the motion. Text Order (October 13, 2022).

Defendant filed its motion for summary judgment on May 26, 2023. ECF No. 39. Plaintiff responded on June 16, 2023 (ECF No. 41) and Defendant thereafter replied on June 23, 2023 (ECF No. 42).

## DISCUSSION

### I.   Legal Standard

#### A.  Motion for Summary Judgment

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are

not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

### B.  Title VII – Disparate Treatment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment

because of sex or national origin. 42 U.S.C. § 2000e–2(a)(1). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

Where a plaintiff lacks direct evidence of discrimination, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* governs. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). In order to survive summary judgment under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she is qualified for the position at issue, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or was treated less favorably than others similarly-situated. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. 792 and *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, (2000)).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *Okoye*, 245 F.3d at 512. If the defendant satisfies its burden of production, the plaintiff may still prevail by offering sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that although the defendant's reason is true, the plaintiff's protected characteristic was a "motivating factor" in its decision. *McDonnell Douglas*, 411 U.S. at 804–05; *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 394 (5th Cir. 2008).

Once the employer articulates a legitimate, non-discriminatory reason for terminating the employee, any presumption of discrimination established by the *prima facie* case disappears, and the employee bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). To do so, the plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### C.  Title VII – Hostile Work Environment

Harassing conduct by coworkers can form the basis of a hostile work environment claim under Title VII. To be actionable, however, such conduct "must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Thus, courts consider "the frequency and severity of the alleged conduct, as well as whether 'it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21 (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). It is not enough to simply show that "colleagues were sometimes offensive and boorish. . . . Title VII does

not impose a 'general civility code' on employers." *West v. City of Houston*, 960 F.3d 736, 743 (5th Cir. 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) ("insensitive and rude" comments, "a few harsh words," and "cold-shouldering" do not constitute a hostile work environment); *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 977 (5th Cir. 2003) (poor performance evaluation and unjust criticism in front of plaintiff's peers does not constitute hostile working environment), *cert. denied*, 541 U.S. 903 (2004).

### D. ADEA

Under the ADEA, it is unlawful for any employer to "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To allege that a termination violates the ADEA, an employee "must prove that age was the 'but-for' cause of the employer's adverse decision. *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d. 658, 663 (S.D. Tex. 2013) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)). Proving that age was a "motivating factor" for the decision is not enough. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases." (citing *Gross*, 557 US at 173–78). While but-for-cause does not mean sole cause, age must be the factor that makes the difference. *Straughan v. Vibra Rehab. Hosp. of El Paso, LLC*, No. EP-19-CV-241-KC, 2020 WL 10758973, at *9 (W.D. Tex. Nov. 29, 2020). Evidence of 'but-for' cause may be direct or circumstantial. *Gross*, 557 U.S. at 177–78).

In the Fifth Circuit, if an employee lacks direct evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 US 792, 802–

7

05 (1973); *see also Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 n. 15 (5th Cir. 2010) (recognizing that the Fifth Circuit has a history of applying the *McDonnell Douglas* framework to allocate the burden of production and the order of presenting proof in ADEA cases). Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must put forth a prima facie case of age discrimination. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). To establish a prima facie case of age discrimination, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Id.* (citing *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (internal quotations and citations omitted); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575–76 (5th Cir. 2003)).

If the plaintiff puts forward a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision. *Id*. If the employer then meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was a pretext for discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

## II.  Analysis

### A. Discriminatory Nepotism

The Court first addresses Plaintiff's claim for discriminatory nepotism. As Defendant correctly contends, protection from nepotism is not actionable under Title VII or the ADEA. The Fifth Circuit addressed nepotism in the context of a Title VII employment discrimination case, holding in relevant part that the plaintiff's claims for nepotism, while they may indicate unfairness, "did not demonstrate how a decision based on family preferences intentionally discriminated on

the basis of race. Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus." *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 878 (5th Cir. 2019) (internal quotation marks and citation omitted).

Second, the Court notes that, as Defendant contends in its reply, it appears that Plaintiff has abandoned her discriminatory nepotism claim. Plaintiff's response indicates that Linda Tyquiengco was identified to serve as a comparator for her disparate impact claims. *See* ECF No. 41 at 15 ("The Plaintiff's claim of discriminatory nepotism does not fail ab initio. The Plaintiff included the relationship of nepotism between Mr. and Mrs. Tyquiengco because Mrs. Tyquiengco is the Plaintiff's comparator.") To the extent Plaintiff has not intended to abandon her discriminatory nepotism claim, it otherwise fails as a matter of law under Title VII and the ADEA, and Defendant is entitled to summary judgment on this claim.

### B.  Disparate Treatment on the Basis of Gender, Age, and National Origin

Plaintiff has failed to identify a sufficient comparator to establish her prima facie case of discrimination. Defendant is therefore entitled to summary judgment on Plaintiff's disparate treatment claims on the basis of her gender, age, and national origin.

Parties agree that Plaintiff satisfies the first three elements required under *McDonnell Douglas* to establish a *prima facie* case of discrimination under both Title VII. Plaintiff establishes that she is a member of a protected class (she is a Mexican American female over forty years old), she is qualified for the position at issue, and she suffered an adverse employment action. *See Okoye*, 245 F.3d at 512–13.

Similarly, Plaintiff establishes under the ADEA that she was discharged, that she was qualified for the position, and that she was within the protected class at the time of discharge. *See Berquist*, 500 F.3d at 349.

Plaintiff fails, however, to establish that she was replaced by someone outside of her protected class or was treated less favorably than others similarly situated (required to establish a prima facie claim of gender or national origin discrimination pursuant to Title VII) or that she was replaced by someone younger or otherwise discharged because of her age (required to establish a prima facie claim of age discrimination pursuant to the ADEA).

Plaintiff identifies Linda Tyquiengco as her comparator. *See* ECF No. 41 at 15. Plaintiff alleges that, during Linda Tyquiengco's tenure at BAMC, she worked directly for her husband, Tye Tyquiengco, as an Information Desk Clerk at the Moreno Clinic, and was given preferential treatment. She further alleges that Linda Tyquiengco was given a favorable schedule and was not required to work overtime, on the weekends, or at different workstations through BAMC. ECF No. 20 at 4.

Plaintiff and Linda Tyquiengco did not, however, share the same position or responsibilities while employed by Defendant. As Defendant correctly notes, Plaintiff was employed as an Assistant Lead and Trainer, while Linda Tyquiengco was employed as an Information Desk Clerk. ECF No. 41 at 11. Additionally, and of critical importance, Linda Tyquiengco is in the same protected class as Plaintiff in terms of both age and gender. And because Plaintiff has provided no evidence of Linda Tyquiengco's national origin, Linda Tyquiengco cannot serve as a valid comparator in the context of Plaintiff's national origin disparate treatment claim.

Because the Plaintiff has failed to identify a valid comparator and establish a prima facie case of discrimination, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claims on the basis of gender, national origin, and age.

The Court also notes that, even if Plaintiff did succeed in establishing a prima facie case of discrimination under Title VII or the ADEA, under the burden-shifting framework, the burden then shifts to Defendant to proffer a legitimate, nondiscriminatory reason for its action. Defendant has done so in this case. Defendant has proffered sufficient evidence of Plaintiff's poor performance and lack of professionalism to satisfy its burden of articulating legitimate, non-discriminatory reasons for its decision to terminate Plaintiff's employment. As detailed in its motion for summary judgment, its legitimate, non-discriminatory reasons include:

- Palomo failed to complete mandatory OPSEC15 training by August 31, 2020;
- Palomo's subordinates complained to Mr. Tyquiengco that she favored employees on the "swing shift" in comparison to the other shifts she supervised;
- A staff member at BAMC complained that Palomo and a BAMC security guard were engaging in "horse play" at the front desk, including exchanging a hug;
- Palomo violated the dress code at BAMC by wearing jeans to work on multiple occasions;
- Some of Palomo's subordinates complained to Mr. Tyquiengco that Palomo refused to interact with them and gave them the "silent treatment" when she saw them;
- Palomo failed to turn her time sheets in on time on March 29, July 20, and August 3, 2020;
- Two outside vendors for BAMC complained that Palomo failed to correctly check them out of BAMC's system, leading to both receiving notices and warnings that they were noncompliant with their employer's policies; and
- A BAMC visitor complained that when she approached Palomo while she was stationed at the front desk, Palomo did not acknowledge her and was looking at her personal cell phone instead.

ECF No. 39 at 25 (citing ECF No. 39-1, Fischer Decl. at 108); *see also* ECF No. 39-1 (Employee Write Up) at 176–77).

Under the burden-shifting framework, Plaintiff would have to offer sufficient evidence to establish that Defendant's reasons for termination were false and a pretext for discrimination.

Plaintiff has failed to do so, instead arguing, without providing evidence, that Defendant treated Plaintiff "different than other employees not in the same class as the Plaintiff." ECF No. 41 at 21.

First, Plaintiff appears to confuse the standard for establishing pretext, arguing that her "documentary evidence establishes that her claims of discrimination are not pretext." ECF No. 41 at 19. Ignoring the confusion however, and reviewing Plaintiff's pleadings in the light most favorable to her, the Court cannot infer that Plaintiff has established that any of Defendant's actions were a pretext for discrimination. As Defendant acknowledges, Plaintiff's response and deposition indicate that she did in fact engage in many of the behaviors for which she was terminated. *See, e.g.*, 31-9, Palomo Dep. at 9:6–12, 31:1–4 (Plaintiff admits she did not complete required training in a timely fashion and also that she did hug a security guard). Plaintiff alleges facts that merely show that she disagreed with those decisions by Defendant, and she attempts to explain why those decisions were improper. At no point, however, does she allege that those decisions were made with discriminatory animus. Plaintiff therefore fails to allege any facts sufficient to survive summary judgment. She has failed to establish a genuine issue of material fact that her termination by Defendant was a pretext for discrimination based on her gender, age, or national origin.

Second, the Court notes that Plaintiff places heavy reliance on a ruling from the Texas Workforce Commission, which found that Defendant did not terminate Plaintiff for misconduct. ECF No. 41 at 12–13; *see also* ECF No. 41-4 at 8–10.  Defendant contends, however, and the Court agrees, that decisions made by the Texas Workforce Commission are not relevant to Title VII or ADEA discrimination claims. "Under Texas law, the Texas Workforce Commission's findings and conclusions may not be used as evidence in lawsuits, except for suits brought to enforce unemployment benefits." *Williams v. Aviall Servs. Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) (citing Tex. Lab. Code § 213.007). While Plaintiff clearly disagrees with Defendant's

decision to terminate her employment, subjective belief of discrimination, however genuine, and conclusory statements, cannot be the basis of judicial relief. *See Jones v. Gulf Coast Rest. Grp., Inc.*, No. 21-60052, 2021 WL 3465000, at *4 (5th Cir. Aug. 6, 2021). Plaintiff's disparate impact claims are therefore dismissed.

### C.  Harassment and Hostile Work Environment

Plaintiff has failed to establish she was subjected to conduct sufficient to support harassment or hostile work environment claims. Plaintiff contends that Mr. Tyquiengco's hostile conduct against her forms a sufficient basis to survive summary judgment. Specifically, she points to the fact that Defendant alleged "she intentionally made physical contact with a federal security guard is disparaging and intentionally false and hostile." ECF No. 41 at 25. She further alleges that Tye Tyquiengco did not inform her as to what was inappropriate about the contact between her and the security guard. *Id*. She alleges that Defendant's allegation that she "submitted her time sheet untimely is intentionally false and the facts support that the Plaintiff timely submitted her timesheets . . . ." *Id*. Finally, Plaintiff contends that Defendant created a hostile work environment by removing her from her position without allowing her the benefit of the grievance procedure specified in Defendant's Employee Handbook and denying her the opportunity to respond orally or in writing to any of Defendant's allegations against her. *Id*.

As previously noted, harassing conduct by coworkers can form the basis of a hostile work environment claim under Title VII. To be actionable, however, such conduct "must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The Court finds that Plaintiff's harassment and hostile work environment claims do not satisfy this standard. *See, e.g.*, *Townsend v. Harvey*, No. SA-05-CA-1140-OG, 2006 WL 2605710, at *6 (W.D. Tex. Sept.

11, 2006) (holding that a situation where a plaintiff was "'talked down to' and demeaned in the presence of her co-workers, and that she was screamed and yelled at for no apparent reason" did not establish an actionable hostile environment claim). For harassment to affect a "term, condition or privilege" of employment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal citations omitted); *see also Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998). Whether workplace harassment is abusive is determined by looking at all the circumstances, including frequency, severity, whether it is physically threatening or humiliating, and whether it reasonably interferes with an employee's performance. *See Harris,* 510 U.S. at 21–23. The Court, reviewing the circumstances alleged by Plaintiff, holds that she has failed to establish that the hostile work environment and harassment she feels she was subjected to amount to abusiveness sufficient to establish a claim. The conduct Plaintiff has identified, including making false and disparaging comments and denying her the opportunity to respond, is not of the type of severity or pervasiveness required to establish harassment and hostile work environment claims. Defendant is therefore entitled to summary judgment on Plaintiff's harassment and hostile work environment claims.

### D.  Failure to Exhaust Administrative Remedies

Finally, the Court notes that it need not address the merits of the timeliness of Plaintiff's exhaustion of her administrative remedies because the Court has instead resolved the case on the basis of Plaintiff's failure to establish a prima facie case of race, gender, or age discrimination, harassment, or hostile work environment.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 39) is **GRANTED.** Plaintiff shall take nothing by her claims, and her claims are **DISMISSED WITH PREJUDICE**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** July 5, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE